A10A0226, A10A0429, A10A0430. S&B ENGINEERS AND CONSTRUCTORS LTD. et al. v. BOLDEN; and vice versa.
(697 SE2d 260)

BARNES, Presiding Judge.

The Appellate Division of the State Board of Workers' Compensation awarded Yvonne Bolden 15 months of benefits following her employer/insurer's total failure to file notice of its intention to suspend Bolden's benefits. The superior court affirmed that award, and the employer/insurer successfully sought discretionary review from this court. Bolden cross-appeals, challenging certain aspects of

the superior court's order.[1] For the reasons that follow, we reverse in part the award of benefits because Bolden amended her claim at the hearing and only sought benefits until she began working again two months before the hearing. We affirm the remainder of the superior court's order affirming the Appellate Division's award.

In June 2006 while working for S&B Engineers and Constructors, Bolden suffered a compensable injury to her left hand and began receiving temporary total disability, effective November 2006. Bolden was treated by a nurse practitioner in November 2006, who assessed her as having peripheral neuropathy and decreased grip in her left hand, and prescribed physical therapy and medication. Bolden failed to improve and the nurse practitioner referred her to a neurologist in January 2007, who diagnosed mild ulnar neuropathy, which was confirmed by a nerve conduction study. The neurologist explained to the workers' compensation insurer case manager in February 2007 that a burn injury could have caused the problem due to scarring or heat injury, and anticipated that Bolden might be able to return to work in two or three weeks after receiving a carpal tunnel injection.

On March 6, 2007, the neurologist prescribed a wrist splint and anticipated that Bolden would be able to return to work in a month. At a followup visit on March 12, 2007, the neurologist performed a carpal tunnel injection, and on March 26, 2007, he noted that Bolden reported the injection did not help. On March 26, 2007, the neurologist completed a form on which he reported that Bolden could return to work as of that day with some restrictions on the amount of weight she could lift or carry. Bolden's case manager accompanied her to the appointment and apparently reported the neurologist's conclusions to the insurer, which terminated Bolden's weekly benefits without notice on April 24, 2007.

Bolden then hired an attorney, who undertook discovery and filed a hearing request in August 2007. The hearing took place in July 2008 to determine whether Bolden was entitled to reinstatement of temporary total disability benefits beginning on April 24, 2007, along with penalties and attorney fees. During the hearing, Bolden amended her request for total temporary disability benefits, seeking them only up to May 9, 2008, when she began working at another job. On September 25, 2008, the ALJ issued an order, finding that the parties stipulated that the employer/insurer was late in paying $304.02 in benefits due before it suspended benefits, and

---

[1] In her two appeals, Case Nos. A10A0429 and A10A0430, Bolden raises identical issues, one being brought as a granted discretionary appeal and the other as a cross-appeal of Case No. A10A0226.

owed that plus $45.32 in penalty for late payment. The ALJ also found that the employer/insurer carried its burden of proving that Bolden's work-related injury had resolved by April 9, 2007, when her treating neurologist reported to the caseworker that Bolden had no more work-related restrictions related to the June 2006 incident.

The ALJ also found that the employer/insurer violated the statute and board rules by failing to file a form WC-2 with the Board or send a copy of the form to Bolden giving her the required ten days notice before suspending her benefits. Thus, although the ALJ found that Bolden was no longer disabled as of April 9, 2007, before the employer/insurer terminated her benefits, the ALJ awarded her an additional ten days of total disability benefits, plus 15 percent of that amount as a penalty for late payment, and 25 percent of that amount for attorney fees. The ALJ also awarded Bolden the stipulated late benefits of $349.34 plus 25 percent of that amount as attorney fees, and denied Bolden's request for an assessment of civil penalties against the employer/insurer for failing to file form WC-2.

Bolden appealed the ALJ's decision to the Appellate Division of the Workers' Compensation Board, which adopted in part and amended in part the ALJ's findings of fact, conclusions of law, and award. The Appellate Division explained:

> While we agree that the employee's work-related injuries had resolved at the time her benefits were suspended, we also find that the employer/insurer's failure to comply with the clear requirements of OCGA § 34-9-221 (i) and Board Rule 221 (i) was at no time corrected until the date of the hearing. Therefore, the administrative law judge's limitation of her award to 10 days was in error. While [*Reliance Elec. Co. v.*] *Brightwell*[, 284 Ga. App. 235 (643 SE2d 742) (2007),] establishes the employee's entitlement to the prescribed 10 days of benefits once notice of the reason for suspension is provided or corrected, that principle does not obviate the requirement for that notice altogether. "Just as the claimant must meet the statute's requirements in order to qualify for benefits, so must the employer adhere to the procedural requirements in order to controvert the claim." [Cits.]

The Appellate Division also found no evidence Bolden had actual or constructive knowledge of the reason for the suspension. It thus concluded Bolden was entitled to income benefits from the April 23, 2007 suspension until the July 23, 2008 hearing, as well as a 15 percent penalty for late payment, but not assessed attorney fees on that award. The Division affirmed the ALJ's assessment of attorney

fees related to the stipulated underpayment and 15 percent penalty totaling $349.34, and affirmed the denial of civil penalties against the employer/insurer.

The employer/insurer appealed to the Superior Court, and Bolden cross-appealed. The court considered the Board's factual findings under the "any evidence" standard and its conclusions of law de novo. It noted that the employer/insurer did not just file the required form WC-2 late; it never filed the form at all. The court found that the employer/insurer "chose not to take advantage of Board Rules which would have allowed it to suspend benefits prior to the evidentiary hearing" and thus found the Board did not err in awarding income benefits to Bolden up through the date of the hearing, when notice to her of the reasons for the suspension was assured. The court also affirmed the remainder of the Appellate Division's order concluding that Bolden's work-related injury had resolved, that she was not entitled to attorney fees related to the income award, and that her motion to compel the production of documents was properly denied.

### Case No. A10A0226

1. The employer/insurer asserts that the superior court erred as a matter of law in affirming the Appellate Division's award of benefits from the time it suspended payments up to the hearing date, arguing that the court "failed to apply the correct legal standard for determining the consequences" of the employer/insurer's failure to comply with OCGA § 34-9-221 (i) and Board Rule 221. It also raises factual arguments regarding the Division's award, contending that Bolden was not entitled to benefits because she had begun working, was re-injured, and received a week's worth of workers' compensation benefits in Florida a year after the employer/insurer in this case suspended her benefits; that Bolden orally amended her benefits request at the hearing to claim her entitlement ended several months earlier, when she began working in Florida; and that Bolden had sufficient notice her benefits were going to be suspended.

OCGA § 34-9-221 (i) provides that the employer *shall* file with the Board and employee notice as required by the Board. Just as the claimant must meet the statute's requirements to obtain benefits, the employer must do so to controvert the claim. *Russell Morgan Landscape Mgmt. v. Velez-Ochoa*, 252 Ga. App. 549, 552 (556 SE2d 827) (2001). "Whether noncompliance with OCGA § 34-9-221 is without reasonable grounds is an issue of fact to be determined by the [B]oard, and its decision will be affirmed by this court if there is any evidence to support it." *Carr v. A. P. & Harry Jones Logging*, 198 Ga. App. 698, 699 (1) (402 SE2d 538) (1991).

In *Sadie G. Mays Mem. Nursing Home v. Freeman*, 163 Ga. App. 557 (295 SE2d 340) (1982), we reversed the conclusion of the superior court and the Appellate Division (formerly the Board) that the employer failed to carry its burden of showing a proper termination of benefits. Id. at 558. Although the employer incorrectly stated in its WC-2 that it was terminating benefits because the employee had returned to work, we held that the form otherwise "contained language sufficient to place the [B]oard and [employee] on notice of termination of benefits due to change in condition." Id. at 559-560 (3). We remanded the case for the Board to make "appropriate findings of fact relating to the issue of change in condition." Id. Similarly, in *Brightwell*, supra, 284 Ga. App. at 235, we reversed the award of benefits up to the hearing date, because the sole defect in that WC-2 was that it was filed six days before the employer suspended benefits instead of the required ten days. Id. at 236. The form listed the reason for the suspension, which was that the employee's treating physician released her to return to work, the employee testified she knew her physician had released her, and the ALJ found that the employee was capable of returning to work without restriction. Id. at 239. As in *Freeman*, this court held in *Brightwell* that

> a technical violation of OCGA § 34-9-221 does not prevent the employer/insurer from contending that no or lesser benefits are due after a certain date due to a change in condition; rather, it subjects the employer/insurer to potential liability for attorney fees if the failure was without reasonable grounds.

(Punctuation omitted.) Id. at 238.

The employer's violation in this case is not a "technical" one, however. The employer did not file a WC-2 a few days late or state an incorrect reason for the termination. Instead, it never filed a WC-2 at all. In *Russell Morgan*, supra, 252 Ga. App. at 551, the employer filed a defective form WC-2 suspending benefits, which gave the wrong reason for termination, failed to include the required medical reports, failed to explain how to challenge the decision, and failed to give ten days notice before ending its payment of income benefits. The ALJ found that the employer established a change of condition as of the termination date but failed to comply with the requirements for unilaterally suspending benefits, and awarded the employee an additional ten days of benefits, as well as attorney fees and a penalty. Id. at 549. The Appellate Division accepted the ALJ's findings of fact but not its conclusions of law and awarded benefits up to the hearing date, when the employee was fairly on notice of the reasons for the

suspension. Id. at 552. In affirming the superior court's affirmance of the Appellate Division, we held that failing to list the proper reason for suspending benefits was not a mere technical violation caused by clerical error. The employer

> failed to comply with provisions of the Workers' Compensation Act and Board Rules designed to afford due process to the injured worker and, unlike *Freeman*, the mistake in listing the reason for suspension does not put the employee on fair notice of the employer's actual grounds for suspension. We act even-handedly when we apply the Act as it is written. Just as the claimant must meet the statute's requirements in order to qualify for benefits, so must the employer adhere to the procedural requirements in order to controvert the claim.

(Citation and punctuation omitted.) Id. at 552.

In this case, the Appellate Division and the superior court held that, regardless of any intervening facts, the employer/insurer's complete failure to file the required termination form required it to pay benefits until the hearing date. Not only did the employer/insurer fail to give notice to the claimant before terminating her income benefits, until the hearing it never explained why it did so. Under these circumstances, the Board did not err in finding that noncompliance with OCGA § 34-9-221 was without reasonable grounds. *Carr*, supra, 198 Ga. App. at 699 (1) (affirming attorney fee award for unreasonable failure to give notice of suspension).

The employer/insurer relies heavily on the fact that the claimant returned to work for a new employer two months before the hearing, had sustained another work-related injury, and had received her first weekly income benefits check in Florida the week before the hearing, but does not note that the claimant testified she was without income for more than a year before she returned to work. We need not address this issue, however, because the claimant amended her claim for benefits during the hearing and sought payment only until she began working again on May 9, 2008. Because Bolden amended her claim, no evidence supports the Appellate Division's award of benefits from May 9, 2008 to July 23, 2008, and the superior court erred in affirming the award of benefits for that time period. We otherwise affirm its award of benefits from the date of termination until May 9, 2008.

The employer also argues that the claimant had constructive knowledge of the reason her benefits were terminated, based on communications between her lawyer and her treating physician. It further contends that the claimant's response to her attorney's

questions at the hearing demonstrated her awareness of the reason her benefits were suspended, but in the cited testimony the claimant merely said she was told the insurer did not approve the surgery her doctor had proposed.

The Appellate Division addressed the notice issue, holding that whether or not constructive knowledge of the reason for the suspension relieves the employer of complying with the statute and Board rules, in this case, "the record contains no convincing evidence that before the date of the hearing the employee either understood or had reason to understand the employer/insurer's position that one condition had resolved as of the date of suspension and the other was not compensable." We must accept these factual conclusions as the record contains evidence to support them.

Accordingly, we affirm the superior court's decision requiring the employer/insurer to pay temporary total disability benefits to the claimant from the date it terminated payments to the date Bolden began working again, and reverse that portion of the decision awarding benefits from May 9, 2008 to July 23, 2008.

### Case Nos. A10A0429, A10A0430

In her cross-appeal, the claimant contends the Appellate Division improperly allowed the employer/insurer to contest whether her ongoing carpal tunnel syndrome was compensable; in finding her work-related injury had resolved; in denying her claim for additional attorney fees; and in denying her motion to compel the insurer to produce certain adjuster notes and e-mail messages.

2. The claimant contends that the employer/insurer could not contest whether her carpal tunnel syndrome was compensable because she had already been receiving payments for an injury diagnosed as "peripheral neuropathy," which included carpal tunnel syndrome. She also asserts the Division erred in finding that her work-related injury had resolved. As the superior court held, however, it was bound by the "any evidence" standard of review regarding the Appellate Division's factual findings, and the record contains sufficient evidence to affirm those findings. We find no error.

3. The claimant asserts the superior court erred in affirming the Division's failure to award additional attorney fees because the employer did not file a form WC-2. The award of such fees is discretionary, however, under OCGA § 34-9-108 (b) (2), which provides:

> If any provision of Code Section 34-9-221, without reasonable grounds, is not complied with and a claimant

> engages the services of an attorney to enforce his or her rights under that Code section and the claimant prevails, the reasonable quantum meruit fee of the attorney, as determined by the board, and the costs of the proceedings *may* be assessed against the employer.

(Emphasis supplied.) We must affirm the Division's decision in this matter if it is supported by any evidence. *Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 472 (3) (627 SE2d 90) (2006). Based on our review of the record, the evidence supports the Division's decision not to award additional attorney fees.

4. Finally, the claimant contends her motion to compel production of certain documents and correspondence from the insurer's claims adjuster should have been granted. The employer objected on the ground that the documents had been prepared in anticipation of litigation and, thus, were not discoverable. The ALJ considered the motion and determined that the employer met its burden of showing the documents were prepared in anticipation of litigation and thus were not discoverable, a decision affirmed by the Appellate Division and the superior court.

> [A] party may discover documents prepared in anticipation of litigation . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. The party served with the request must prove that the material sought was prepared in anticipation of litigation or trial.

*Lowe's of Ga. v. Webb*, 180 Ga. App. 755, 756 (350 SE2d 292) (1986). In this case, the ALJ found that the claimant failed to establish her substantial need for the material. The Appellate Division and the superior court affirmed, and based on our review of the evidence, we find no error.

*Judgment affirmed in part and reversed in part. Blackburn and Bernes, JJ., concur.*

DECIDED JUNE 22, 2010 — 

*Drew, Eckl & Farnham, John C. Bruffey, Jr., James Janarious*, for appellants.

*Phillip M. Eddings*, for appellee.